Michelle Sandra **PHILLIPS**, Petitioner,

v.

State of **IOWA**, Ken Burger, Superintendent, Mt. Pleasant Correctional Facility, Respondent.

No. C00–0123–MWB.

United States District Court, N.D. Iowa, Cedar Rapids Division.

Jan. 24, 2002.

Jon M. Kinnamon, Cedar Rapids, IA, for petitioner.

Robert P. Ewald, Assistant Attorney General, Des Moines, IA, for respondent.

## MEMORANDUM OPINION AND OR-DER REGARDING MAGISTRATE JUDGE'S REPORT AND RECOM-MENDATION

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 995

II. DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 995
 A. Procedural And Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 995
 B. Standard Of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 996
 C. Court's Role In Reviewing Habeas Petitions: The Requirements of
 § 2254(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 997
 D. Phillips's Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 998
 1. Facial challenges on constitutionality of Iowa Code section 902.12 . . . . . 998
 a. Bill of attainder argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 998
 b. Equal protection argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1005
 i. Burden on fundamental rights argument . . . . . . . . . . . . . . . . . . 1006
 ii. Arbitrary and capricious classification argument . . . . . . . . . . . 1006
 2. As applied Eighth Amendment challenge: Cruel and unusual
 punishment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1014
 E. Certificate Of Appealability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1020

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1021

## I. INTRODUCTION

In this action, the petitioner, Michelle Sandra Phillips ("Phillips"), seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, arguing that her sentences for three counts of second-degree robbery are unconstitutional. After Phillips entered guilty pleas and was adjudged guilty on February 27, 2001 of three counts of second-degree robbery in Iowa state court, she was sentenced to serve three terms of imprisonment of up to ten years each, to run concurrently. Although Phillips was sentenced to indeterminate terms, Iowa's sentencing scheme requires her to serve 100 percent of her sentences, subject to a possible fifteen percent reduction for "good time." *See* Iowa Code §§ 902.12, 903A.2 (collectively known as "the eighty-five percent rule"). Thus, Phillips must serve a minimum of eight and one-half years imprisonment before she will be eligible for release.

In her petition, Phillips challenges the constitutionality of her imprisonment on three discrete grounds. First, she argues that Iowa Code section 902.12, which requires that certain offenders, including those convicted of second-degree robbery, serve one hundred percent of the mandatory maximum sentence, constitutes a bill of attainder because it alters the sentence imposed by the trial court without a hearing and removes the Iowa Parole Board's discretion in determining the actual length of an indeterminate sentence. Second,

Phillips contends that the applicability of Iowa Code section 902.12 results in cruel and unusual punishment, in violation of the Eighth Amendment to the United States Constitution. She argues that this is so because the statute results in a punishment that is unconstitutionally disproportionate to the crime committed. And third, Phillips maintains that section 902.12, which enumerates those felonies subject to a one hundred percent mandatory minimum term of imprisonment, violates the Equal Protection Clause, because "[t]he list of forcible felonies contained in the statute are underinclusive and the statute excludes without a rational or legitimate basis other class 'C' forcible felonies as well as some class 'B' forcible felonies that have a higher classification than Petitioner's class 'C' robbery offense." Pet.'s Br., at 12.

## II. DISCUSSION

### A. Procedural And Factual Background

As Magistrate Judge Paul A. Zoss noted in the Report and Recommendation regarding Phillips's petition for *habeas corpus*, Phillips's petition presents pure questions of law; therefore, an exhaustive dissertation of the underlying facts of her conviction are unnecessary. Briefly put, Phillips pled guilty to three counts of second-degree robbery, in violation of Iowa Code sections 711.1 and 711.3.[1] Upon ac-

---

1. Robbery is defined as:
 A person commits a robbery when, having the intent to commit a theft, the person does any of the following acts to assist or further the commission of the intended theft or the person's escape from the scene thereof with or without the stolen property:
 1. Commits an assault upon another.
 2. Threatens another with or purposely puts another in fear of immediate serious injury.
 3. Threatens to commit immediately any forcible felony.

 It is immaterial to the question of guilt or innocence of robbery that property was or was not actually stolen.
 Iowa Code § 711.1. Second degree robbery, the offense to which Phillips pled guilty, is all robbery that is not first degree robbery. *See id.* § 711.3. First degree robbery, then, is committed when a person "while perpetrating a robbery, ... purposely inflicts or attempts to inflict serious injury, or is armed with a dangerous weapon." *Id.* § 711.2.

cepting her guilty plea, the state court sentenced Phillips to three indeterminate terms of imprisonment, not to exceed ten years each, which were to run concurrently.

Phillips timely exhausted her state remedies, and this petition for *habeas corpus* was filed timely as well, on August 2, 2000. On June 21, 2001, Magistrate Judge Zoss filed a Report and Recommendation on Phillips's petition, in which he recommends judgment be entered in favor of the State and against Phillips. Phillips, however, filed objections to the Report and Recommendation on July 2, 2001, in which she sets forth eleven objections.

In her objections, Phillips, of course, disagrees with Judge Zoss's recommendation but primarily disagrees with his characterization of her arguments. Judge Zoss's characterization, however, obviously affected his analysis of Phillips's claims. Therefore, her objections go to the substance of Judge Zoss's recommendation, and the court will address each of Phillips's objections in turn. Nevertheless, it suffices to say for the present time that Phillips chiefly objects to Judge Zoss's description of her claims for *habeas* relief on the ground that she does not contend that her three indeterminate sentences not to exceed ten years are unconstitutional. Instead, she claims that the application of Iowa Code section 902.12 to her sentences effectively resulted in a new and separate sentence, without a judicial hearing, of a determinate ten year sentence. She contends that the Iowa Code allows only for indeterminate sentences, and by requiring that certain convicted felons serve 100 percent of the maximum allowable sentence, section 902.12 usurps the judiciary's role in sentencing defendants.

### B. Standard Of Review

The standard of review to be applied by the district court to a Report and Recommendation of a magistrate judge is established by statute:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].

28 U.S.C. § 636(b)(1). The Court of Appeals for the Eighth Circuit has repeatedly held that it is reversible error for the district court to fail to conduct a *de novo* review of a magistrate judge's report when such review is required. *See, e.g., Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir.) (citing 28 U.S.C. § 636(b)(1)), *cert. denied*, 519 U.S. 860, 117 S.Ct. 164, 136 L.Ed.2d 107 (1996); *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir.1996) (citing *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir.1994)); *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995) (also citing *Belk*, 15 F.3d at 815). However, the plain language of the statute mandates *de novo* review only for "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Therefore, those portions of the proposed findings or recommendations contained in the magistrate judge's report and recommendation to which no objections are filed are reviewed only for "plain error." *See Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir.1994) (reviewing factual findings for "plain error" when no objections to the magistrate judge's report were filed). Phillips has filed eleven objections to the Report and Recommendation, and

---

First degree robbery is a class "B" felony, while second degree robbery is a class "C"

felony. *See id.* §§ 711.2, 711.3.

the court, therefore, will undertake the necessary review of Judge Zoss's recommended disposition of Phillips's petition for a writ of *habeas corpus.*

## C. *Court's Role In Reviewing* Habeas Petitions: *The Requirements of § 2254(d)(1)*

Section 2254(d)(1) of Title 28, as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, provides as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was *contrary to,* or involved *an unreasonable application of,* clearly established Federal law, as determined by the Supreme Court of the United States[.]

28 U.S.C. § 2254(d)(1) (emphasis added). As the United States Supreme Court explained in *Williams v. Taylor,* 529 U.S. 362, 403, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), "for [a petitioner] to obtain federal habeas relief, he [or she] must first demonstrate that his case [or her case] satisfies the condition set by § 2254(d)(1)."

In *Williams,* the Supreme Court addressed the question of precisely what the "condition set by § 2254(d)(1)" requires. *See id.* at 374–90, 120 S.Ct. 1495 (Part II of the minority decision); *id.* at 402–12, 120 S.Ct. 1495 (Part II of the majority decision).[2] In the portion of the majority decision on this point, the majority summarized its conclusions as follows:

[Section] 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. *Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied*—the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." *Under the "contrary to" clause,* a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. *Under the "unreasonable application" clause,* a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at 413, 120 S.Ct. 1495 (emphasis added); *see also Whitmore v. Kemna,* 213 F.3d 431, 433 (8th Cir.2000) ("It seems to us that § 2254(d) as amended by the AEDPA is unambiguous as to the scope of federal court review, limiting such review (at least as compared with past practice) in order to effect the intent of Congress to expedite habeas proceedings with appropriate deference to state court determinations. *See Williams v. Taylor,* 529 U.S.

---

**2.** In *Williams,* the opinion of Justice Stevens obtained a 6–3 majority, except as to Part II, which is the pertinent part of the decision here. *See Williams,* 529 U.S. at 367, 120 S.Ct. 1495. Justice O'Connor delivered the opinion of the Court as to Part II, in which she was joined by Chief Justice Rehnquist and Justices Kennedy, Thomas, and Scalia, thereby obtaining a 5–4 majority on this portion of the decision. *See id.*

362, 403, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (noting purposes of AEDPA amendments).").

The Court also clarified two other important definitions. First, the Court concluded that "unreasonable application" of federal law under § 2254(d)(1) cannot be defined in terms of unanimity of "reasonable jurists"; instead, "the most important point is that an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 403, 120 S.Ct. 1495. Consequently, "[u]nder § 2254(d)(1)'s 'unreasonable application' clause, ... a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be [objectively] unreasonable." *Id.* Second, the Court clarified that "clearly established Federal law, as determined by the Supreme Court of the United States" "refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision," and "the source of clearly established law [is restricted] to this Court's jurisprudence." *Id.* at 403, 120 S.Ct. 1495.

Applying these standards to Phillips's petition, the court must determine whether the Iowa Supreme Court's decision in her case, *see State v. Phillips,* 610 N.W.2d 840 (Iowa 2000), which held that 902.12 did not violate Phillips's constitutional rights, was a reasonable application of clearly established federal law. The court will address each of Phillips's claims and objections to Judge Zoss's Report And Recommendation *seriatim.*

### D. Phillips's Claims

### 1. Facial challenges on constitutionality of Iowa Code section 902.12

The statute in question, which Phillips attacks as unconstitutional, provides, in pertinent part:

Except as otherwise provided in section 903A.2, a person serving a sentence for conviction of the following forcible felonies shall serve one hundred percent of the maximum term of the person's sentence and shall not be released on parole or work release:

. . . .

4. Robbery in the first or second degree in violation of section 711.2 or 711.3.

Iowa Code § 902.12.

Moreover, although not entirely relevant to Phillips's claims, section 903A.2, which is referenced in section 902.12, provides for a "good time" reduction of up to fifteen percent of a defendant's sentence. The effect of sections 902.12 and 903A.2, together, is that a person who has committed an offense enumerated in section 902.12 will ultimately be required to serve a minimum of eighty-five percent of the maximum term of imprisonment for that defendant's particular offense. In Phillips's case, she will be required to serve at least eight and one-half years, because second-degree robbery is a section 902.12 offense and is subject to a ten year maximum term of imprisonment. *See* Iowa Code § 902.9(4) (10 years maximum sentence for second degree robbery).

### a. Bill of attainder argument

The prohibition against the passage of bills of attainder is so important that it is mentioned twice in the United States Constitution: "No Bill of Attainder ... shall be passed [by the Congress]," U.S. Const. art. I, § 9, cl. 3; and "No State shall ... pass any Bill of Attainder ...," U.S. Const. art. I, § 10. "The prohibitions on 'Bills of Attainder' in Art. I, §§ 9–10, prohibit legislatures from singling out disfavored persons and meting out summary punishment for past conduct." *Landgraf v. USI Film Prods.,* 511 U.S. 244, 266, 114

S.Ct. 1483, 128 L.Ed.2d 229 (1994) (citing *United States v. Brown*, 381 U.S. 437, 456–62, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965)).

The United States Supreme Court explored the history and purpose of the Bill of Attainder clauses of the United States Constitution in *United States v. Brown*, 381 U.S. at 441–42, 85 S.Ct. 1707:

> The bill of attainder, a parliamentary act sentencing to death one or more specific persons, was a device often resorted to in sixteenth, seventeenth and eighteenth century England for dealing with persons who had attempted, or threatened to attempt, to overthrow the government. In addition to the death sentence, attainder generally carried with it a 'corruption of blood,' which meant that the attainted party's heirs could not inherit his property. The 'bill of pains and penalties' was identical to the bill of attainder, except that it prescribed a penalty short of death, *e.g.*, banishment, deprivation of the right to vote, or exclusion of the designated party's sons from Parliament. Most bills of attainder and bills of pains and penalties named the parties to whom they were to apply; a few, however, simply described them. While some left the designated parties a way of escaping the penalty, others did not. The use of bills of attainder and bills of pains and penalties was not limited to England. During the American Revolution, the legislatures of all thirteen States passed statutes directed against the Tories; among these statutes were a large number of bills of attainder and bills of pains and penalties.
>
> While history thus provides some guidelines, the wide variation in form, purpose and effect of ante-Constitution bills of attainder indicates that the proper scope of the Bill of Attainder Clause, and its relevance to contemporary problems, must ultimately be sought by attempting to discern the reasons for its inclusion in the Constitution, and the evils it was designed to eliminate. The best available evidence, the writings of the architects of our constitutional system, indicates that the Bill of Attainder Clause was intended not as a narrow, technical (and therefore soon to be outmoded) prohibition, but rather as an implementation of the separation of powers, a general safeguard against legislative exercise of the judicial function, or more simply—trial by legislature.

*Id.* at 441–42, 85 S.Ct. 1707 (footnotes omitted). It is precisely this "trial by legislature" that Phillips claims is effectuated by Iowa Code section 902.12.

■ "A bill of attainder is 'a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protection of a judicial trial.'" *WMX Technologies, Inc. v. Gasconade County, Mo.*, 105 F.3d 1195, 1201 (8th Cir.1997) (quoting *Nixon v. Administrator of Gen. Servs.*, 433 U.S. 425, 468, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977); and citing *Ambassador Books & Video v. Little Rock Ark.*, 20 F.3d 858, 865 (8th Cir.1994), *cert. denied*, 513 U.S. 867, 115 S.Ct. 186, 130 L.Ed.2d 120 (1994)). "To constitute a bill of attainder, [a] statute must (1) specify affected persons, (2) impose punishment, and (3) fail to provide for a judicial trial." *Planned Parenthood of Mid–Missouri & E. Kansas, Inc. v. Dempsey*, 167 F.3d 458, 465 (8th Cir.1999) (citing *Selective Serv. Sys. v. Minnesota Pub. Interest Res. Group*, 468 U.S. 841, 847, 104 S.Ct. 3348, 82 L.Ed.2d 632 (1984)); *accord Langford v. Day*, 134 F.3d 1381, 1382–83 (9th Cir.1998) ("The characteristics of a bill of attainder are specificity of the affected persons, imposition of punishment, and lack of a judicial trial.") (citing *Atonio v. Wards Cove Packing Co.*, 10 F.3d 1485, 1495 (9th Cir.1993)). In *De Veau v. Braisted*, 363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960), Justice Frankfurter

explained: "The distinguishing feature of a bill of attainder is the substitution of a legislative for a judicial determination of guilt.... Clearly, [the challenged statute] embodies no further implications of appellant's guilt than are contained in his [prior] judicial conviction; and so it manifestly is not a bill of attainder." *Id.* at 160, 80 S.Ct. 1146.

Although the Eighth Circuit Court of Appeals has not squarely addressed the statute that Phillips attacks as unconstitutional, it has upheld similar statutes. For example, in *United States v. Van Horn,* 798 F.2d 1166 (8th Cir.1986), the Eighth Circuit rejected the appellant's contention that 18 U.S.C. § 3146(b) was an unconstitutional bill of attainder. *Id.* at 1168. The challenged statute "fixes the punishment for persons convicted of knowingly failing to appear before a court as required by the conditions of their release, or knowingly failing to surrender for service of sentence pursuant to a court order. The statute fixes maximum terms of imprisonment, depending on the gravity of the charge that was pending when the knowing failure to appear or surrender took place." *Id.* at 1167. In *Van Horn,* the appellant pled guilty to possession of counterfeit money and was granted the privilege of self-surrender. *Id.* However, the appellant failed to appear when directed. *Id.* When he was ultimately apprehended, he was tried and convicted for violating 18 U.S.C. § 3146, the federal failure to appear statute. *Id.* Section 3146(b) mandates that the sentence imposed for failing to appear run consecutively to the defendant's sentence already imposed for possession of counterfeit money. *Id.*

The appellant, Van Horn, argued, *inter alia,* that section 3146(b) was a bill of attainder. *Id.* at 1168. Rejecting this argument, the court reasoned:

A bill of attainder is a legislative determination of guilt which metes out punishment to named individuals, see, *e.g., United States v. Lovett,* 328 U.S. 303, 106 Ct.Cl. 856, 66 S.Ct. 1073, 90 L.Ed. 1252 (1946), or readily identifiable groups, see, *e.g., Ex Parte Garland,* 4 (71 U.S.) Wall. 333, 18 L.Ed. 366 (1867)[1866]. In passing a bill of attainder, the Congress departs from its constitutional role of providing general rules for the government of society and usurps the judicial role by making a legislative determination of guilt. *Fletcher v. Peck,* 6 Cranch (10 U.S.) 87, 136, 3 L.Ed. 162 (1810). The danger of such a law is that it deprives the accused of the protections afforded by judicial process. But Van Horn was not the victim of a bill of attainder. He was convicted after a trial in court (to which he has not objected) for failing to surrender in accordance with the court's orders. His guilt was not determined by Congress, nor has the Congress imposed a punishment on him without a trial. Nothing in § 3146(b) singles out Van Horn for punishment which is different from what would be imposed on anyone else found guilty of the same offense. Congress simply specified the punishment, or one feature of it, that is to be imposed by courts after a judicial finding of guilt.

*Id.*[3]

The *Van Horn* court's analysis is instructive to Phillips's case for two primary

---

**3.** In analyzing a bill alleged to be an attainder, relevant precedents under the federal Constitution's Bill of Attainder Clause proscribing the federal government from passing a bill of attainder and under a state constitution's clause proscribing a state from passing

a bill of attainder generally may be used interchangeably. *Kerr–McGee Chemical Corp. v. Edgar,* 837 F.Supp. 927, 934 n. 6 (N.D.Ill. 1993). Accordingly, this court will not distinguish between those cases analyzing the clause prohibiting Congress from passing a

reasons. First, one of the grounds upon which the Eighth Circuit held section 3146 was not a bill of attainder was because it did not single out a named individual or readily identifiable group. *See id.* Instead, the statute applied to all individuals found guilty of failure to appear. *Id.* Similarly, the mandatory minimum of section 902.12 of the Iowa Code is imposed on *all* those found guilty of an enumerated offense. *See* IOWA CODE § 902.12.

Second, like section 3146's mandatory consecutive sentence, section 902.12 is not implicated until *after* a judicial finding of guilt. Thus, the Iowa legislature was not appropriating the judiciary's role of determining guilt when it enacted section 902.12, which requires that certain individuals serve one hundred percent of the statutory maximum sentence. Section 902.12 does not determine guilt; instead, section 902.12 fixes punishment, which is a proper legislative function. *See id.; see also Foucha v. Louisiana,* 504 U.S. 71, 76 n. 4, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992) ("There is no doubt that the States have wide discretion in determining punishment for convicted offenders, but the Eighth Amendment ensures that discretion is not unlimited."); *Collins v. Johnston,* 237 U.S. 502, 510, 35 S.Ct. 649, 59 L.Ed. 1071 (1915) (stating that "[t]o establish appropriate penalties for the commission of crime, and to confer upon judicial tribunals a discretion respecting the punishment to be inflicted in particular cases, within limits fixed by the lawmaking power, are functions peculiarly belonging to the several states" and that "the comparative gravity of the criminal offenses, and whether their consequences are more or less injurious" are for state legislatures to decide); *cf. Ramdass v. Angelone,* 530 U.S. 156, 165, 120 S.Ct. 2113, 147 L.Ed.2d 125 (2000)

(stating that "[s]tates have some discretion in determining the extent to which a sentencing jury should be advised of probable future custody and parole status in a future dangerousness case") (citing *O'Dell v. Netherland,* 521 U.S. 151, 166, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997)); *Apprendi v. New Jersey,* 530 U.S. 466, 481, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (recognizing that the Constitution permits judges to exercise discretion within statutory guidelines when imposing sentences).

In *Schafer v. Moore,* 46 F.3d 43 (8th Cir.1995) (per curiam), the Eighth Circuit addressed a bill of attainder challenge on the constitutionality of a Missouri statute. In that case, the appellants challenged the Missouri Sexual Offender Program ("MOSOP"), which provided: " 'All persons imprisoned by the department of corrections and human resources for sexual assault offenses shall be required to *participate in* the programs developed pursuant to subsection 1 of this section.' " *Id.* at 44 (quoting Mo. REV. STAT. § 589.040.2 (1986) (emphasis provided by Eighth Circuit)). In 1990, the Missouri Sexual Offender Program statute was amended, substituting "successfully complete" for "participate in." *Id.* (citing Mo. REV. STAT. § 589.040.2 (Supp.1994)). The appellant, who pled guilty to rape in 1989, participated in the program but was denied parole because he failed to complete it. *Id.* The appellant argued that application of the 1990 amendment to him violated the *Ex Post Facto* Clause of the United States Constitution and that the Missouri Sexual Offender Program was a bill of attainder. *Id.*

The court of appeals "reject[ed] as meritless Schafer's argument that the MOSOP statute constitute[d] a bill of attainder." *Id.* at 45. That is so, the court reasoned,

---

bill of attainder and those cases addressing the clause which proscribes the states from

passing bills of attainder.

because "the MOSOP statute applies only to persons who have already been convicted of sex offenses[; therefore,] it cannot be classified as a bill of attainder." *Id.* Phillips's argument that section 902.12 constitutes a bill of attainder fails for the same reason—section 902.12 applies only to persons already convicted of an enumerated felony.

The respondent, the State of Iowa, advances this precise argument. It maintains that Phillips ignores the fact that the statute does not come into play until a defendant commits one of the enumerated crimes; thus, the statute does not target either named individuals or easily ascertainable members of a group, but rather the whole class of persons who commit the specified crimes. The State further points out that before the statute affects a person, that person must be found guilty of one of the listed crimes through the very judicial process Phillips claims to be lacking.

■ The Iowa Supreme Court agreed with the respondent's argument and held that "Iowa Code section 902.12, which does not impose punishment based on a defendant's status or without trial, is not a bill of attainder." *State v. Phillips,* 610 N.W.2d 840, 843 (Iowa 2000) (citing *Langford v. Day,* 134 F.3d 1381, 1382–83 (9th Cir.1998)). Pursuant to *Williams,* Phillips bears the burden of showing the Iowa Supreme Court's decision that the statute does not constitute a bill of attainder was contrary to Supreme Court precedent, or an unreasonable application of the law to these facts. *See Williams,* 529 U.S. at

403, 120 S.Ct. 1495. She relies upon *United States v. Lovett,* 328 U.S. 303, 106 Ct.Cl. 856, 66 S.Ct. 1073, 90 L.Ed. 1252 (1946), in arguing the Iowa statute constitutes a bill of pains.[4]

■ In *Lovett,* the United States Supreme Court addressed a statute that specifically named the respondents. *Id.* at 305, 66 S.Ct. 1073. The respondents, prior to Congress's passage of the challenged statute, were employed by the federal government. *Id.* However, Congress enacted a bill, which provided:

"No part of any appropriation, allocation, or fund (1) which is made available under or pursuant to this Act, or (2) which is now, or which is hereafter made, available under or pursuant to any other Act, to any department, agency, or instrumentality of the United States, shall be used, after November 15, 1943, to pay any part of the salary, or other compensation for the personal services, of Goodwin B. Watson, William E. Dodd, Junior, and Robert Morss Lovett, unless prior to such date such person has been appointed by the President, by any with the advice and consent of the Senate: Provided, That this section shall not operate to deprive any such person of payment for leaves of absence or salary, or of any refund or reimbursement, which have accrued prior to November 15, 1943: Provided further, That this section shall not operate to deprive any such person of payment for services performed as a member of a jury or as a member of the armed forces

---

4. The Bill of Attainder clauses of the Constitution prohibit both bills of attainder, which impose penalty of death, and bills of pains, which impose a punishment of less than death. *United States v. Lovett,* 328 U.S. 303, 315, 106 Ct.Cl. 856, 66 S.Ct. 1073, 90 L.Ed. 1252 (1946) (citing *Cummings v. Missouri,* 4 Wall. 277, 323, 18 L.Ed. 356 (* * * *)). The *Cummings* Court distinguished the bills: " 'A

bill of attainder is a legislative act which inflicts punishment without a judicial trial. If the punishment be less than death, the act is termed a bill of pains and penalties. Within the meaning of the Constitution, bills of attainder include bills of pains and penalties.' " *Id.* (citing *Cummings,* 4 Wall. at 323, 18 L.Ed. 356).

of the United States nor any benefit, pension, or emolument resulting therefrom."

*Id.* at 306 & n. 1, 66 S.Ct. 1073.

While Phillips emphasizes the *Lovett* Court's analysis with respect to her bill of attainder argument, the court finds that the *Lovett* case is, for the most part, inapposite to Phillips's case. It appears to this court that there are essentially two lines of bill of attainder cases. *Lovett* is demonstrative of the first line and dealt with a regulatory-type statute. *See id.* at 303, 66 S.Ct. 1073. Other cases in this line of cases include, for example, *Planned Parenthood of Mid–Missouri & Eastern Kansas, Inc. v. Dempsey,* 167 F.3d 458 (8th Cir.1999) (Missouri statute denying state family planning funds to abortion service providers was not an unconstitutional bill of attainder on theory it imposes punishment without a trial), *WMX Technologies, Inc. v. Gasconade County, Mo.,* 105 F.3d 1195 (8th Cir.1997) (Allegedly burdensome and excessive solid waste management ordinance was not unconstitutional bill of attainder, even though solid waste collector was the only entity which had operated landfill in past and the only entity currently pursuing project for which permit was required under ordinance; ordinance did not single out collector, but attached to described activities, and ordinance was not punitive, particularly as it did not prevent collector from operating landfill in county), and *Ambassador Books & Video, Inc. v. City of Little Rock, Ark.,* 20 F.3d 858 (8th Cir.1994) (City ordinance limiting areas of city in which sexually oriented businesses could operate was not an unlawful bill of attainder; restrictions in ordinance were imposed not to punish operators of sexually oriented businesses for their past conduct but to protect citizens from adverse secondary effects those businesses had on quality of life in areas where they operated).

The cases that are more analogous to Phillips's challenge on section 902.12 include *Van Horn,* 798 F.2d at 1166 (statute requiring consecutive sentence for failure to appear not bill of attainder because appellant's guilt was determined by trial, not by the statute fixing punishment), *Schafer,* 46 F.3d at 43 (Missouri statute not bill of attainder because statute implicated only once defendants are convicted), and *Velarde v. Zavaras,* 960 P.2d 1162, 1164 (Colo.1998) (upholding Colorado's habitual offender statute as not constituting a bill of attainder because it "only comes into play after a defendant is convicted of a specific, new offense ... following a judicial trial") (cited in *Phillips,* 610 N.W.2d at 843). The Iowa Supreme Court properly utilized this latter line of cases in formulating its analysis. *See Phillips,* 610 N.W.2d at 843.

Phillips also relies on the Supreme Court's decision in *United States v. Brown,* 381 U.S. at 437, 85 S.Ct. 1707, to support the proposition that "a statute which inflicts its deprivation upon described persons or groups constitutes a bill of attainder whether with its aims is retributive, punishing past acts or preventive, discouraging future conduct." Pet.'s Objections, at 10 (Doc. No. 14). However, here again, *Brown* is not particularly relevant to the Phillips's case. *Brown* invalidated section 504 of the Labor–Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 504, that made it a crime for a Communist Party member to serve as an officer of a labor union. *Brown,* 381 U.S. at 442–43, 85 S.Ct. 1707. After detailing the infamous history of bills of attainder, the Court found that the Bill of Attainder Clause was an important ingredient of the doctrine of "separation of powers," one of the organizing principles of our system of government. *Id.* Just as Art. III confines the Judiciary to the task of adjudicating concrete "cases or contro-

versies," so too the Bill of Attainder Clause was found to "reflect ... the Framers' belief that the Legislative Branch is not so well suited as politically independent judges and juries to the task of ruling upon the blameworthiness of, and levying appropriate punishment upon, specific persons." *Id.* at 445, 85 S.Ct. 1707. *Brown* thus held that section 504 worked a bill of attainder by focusing upon easily identifiable members of a class members of the Communist Party and imposing on them the sanction of mandatory forfeiture of a job or office, long deemed to be punishment with the contemplation of the Bill of Attainder Clause. *Id.* (citing *Lovett,* 328 U.S. at 316, 66 S.Ct. 1073; and *Cummings,* 4 Wall. at 320, 18 L.Ed. 356).

Phillips's citation of *Brown,* however, points only to the Supreme Court's definition of "punishment." Pet.'s Reply Br., at 8. Section IV of the *Brown* decision addresses whether the statute in question was punitive, rather than retributive, in purpose. *See generally id.* at 456–61, 85 S.Ct. 1707. The Solicitor General argued that section 504 did not constitute a bill of attainder "because the prohibition it imposes does not constitute 'punishment.' In support of this conclusion, he urges that the statute was enacted for preventive rather than retributive reasons—that its aim is not to punish Communists for what they have done in the past, but rather to keep them from positions where they will in the future be able to bring about undesirable events." *Id.* at 456, 85 S.Ct. 1707.

The court finds that Judge Zoss was wholly justified in not addressing Phillips's argument that *Brown* controls her case, because reaching the question of whether section 902.12 imposes "punishment" is unnecessary; therefore, an in-depth analysis of *Brown's* holding would be superfluous. Phillips misconstrues the Constitution's prohibition against bills of attainder. Section 902.12 does not come into play unless and until a person is convicted or adjudged guilty of one of the enumerated offenses. The cardinal feature of a bill of attainder is a *legislative determination of guilt.* *WMX Technologies, Inc.,* 105 F.3d at 1201 ("A bill of attainder is 'a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protection of a judicial trial.'") (quoting *Nixon,* 433 U.S. at 468, 97 S.Ct. 2777; and citing *Ambassador Books & Video,* 20 F.3d at 865); *accord Charles v. Rice,* 28 F.3d 1312 (1st Cir.1994) (same); *Doe v. Weld,* 954 F.Supp. 425 (D.Mass.1996) (same); *Ernst & Young v. Depositors Economic Protection Corp.,* 862 F.Supp. 709 (D.R.I.1994) (same), *aff'd,* 45 F.3d 530 (1st Cir.1995); *Universal Sanitation Corp. v. Trade Waste Comm'n of City of New York,* 940 F.Supp. 656 (S.D.N.Y.1996) (same); *Artway v. Attorney General of New Jersey,* 876 F.Supp. 666 (D.N.J.1995) (same), *aff'd in part, vacated in part on other grounds,* 81 F.3d 1235 (3d Cir.1996); *United States v. Dorlouis,* 107 F.3d 248 (4th Cir.) (same), *cert. denied,* 521 U.S. 1126, 117 S.Ct. 2525, 138 L.Ed.2d 1025 (1997); *United States v. DesAnges,* 921 F.Supp. 349 (W.D.Va.1996) (same); *Shankles v. Director, TDCJ–ID,* 877 F.Supp. 346 (E.D.Tex.1995) (same); *Zilich v. Longo,* 34 F.3d 359 (6th Cir.1994) (same), *reh'g and suggestion for reh'g en banc denied,* (Nov. 3, 1994) and *cert. denied,* 514 U.S. 1036, 115 S.Ct. 1400, 131 L.Ed.2d 288 (1995); *Dehainaut v. Pena,* 32 F.3d 1066 (7th Cir.1994) (same), *cert. denied,* 514 U.S. 1050, 115 S.Ct. 1427, 131 L.Ed.2d 309 (1995); *Atonio v. Wards Cove Packing Co., Inc.,* 10 .F.3d 1485 (9th Cir. 1993) (same), *cert. denied,* 513 U.S. 809, 115 S.Ct. 57, 130 L.Ed.2d 16 (1994); *Gardner v. Wilson,* 959 F.Supp. 1224 (C.D.Cal. 1997) (same); *United States v. Patzer,* 15 F.3d 934 (10th Cir.1993) (same); *Vanderlinden v. Kansas,* 874 F.Supp. 1210 (D.Kan.1995) (same), *judgment aff'd,* 103

F.3d 940 (10th Cir.1996); *Lee v. City of Villa Rica*, 264 Ga. 606, 449 S.E.2d 295 (1994) (same); *Rhode Island Depositors Economic Protection Corp. v. Brown*, 659 A.2d 95 (R.I.1995) (same), *related reference*, 661 A.2d 969 (R.I.1995); *In re Petition of Quechee Serv. Co.*, 166 Vt. 50, 690 A.2d 354 (1996) (same); *State v. Manussier*, 129 Wash.2d 652, 921 P.2d 473 (1996) (same).

 In order for a statute to constitute a bill of attainder, three elements are necessary—"specificity in identification, punishment, and lack of a judicial trial." *E.g.*, *United States v. O'Brien*, 391 U.S. 367, 384 n. 30, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). In determining whether a particular statute is a bill of attainder, the analysis necessarily requires an inquiry into whether these three definitional elements are contained in the statute. *Id.* Because section 902.12 does not apply to individuals absent a judicial determination of guilt, the court need not address the remaining two elements, specificity and punishment.

In sum, this court agrees with the Iowa court's determination and with the recommendation of Judge Zoss that Iowa Code section 902.12 does not constitute a bill of attainder because the statute applies evenhandedly to all persons convicted of certain enumerated offenses and because it is implicated only after a judicial determination of guilt. The court is unpersuaded by the petitioner's argument, albeit intriguing, that section 902.12 is a separate and independent sentence from her indeterminate ten-year sentences. Phillips objects to Judge Zoss's and the Iowa Supreme Court's conclusion that her "guilt was not pronounced by the statute, but by a court of law after providing her with an opportunity for a full and fair hearing." Pet.'s Objection No. 3, at 4. However, for the reasons discussed above, Phillips's claim that section 902.12 is an unconstitutional bill of attainder must fail, and the court

will overrule Phillips's objections to the Report and Recommendation with respect to Judge Zoss's recommendation that the court deny her claim that section 902.12 constitutes a bill of attainder. The court has considered Phillips's remaining objections to the Report and Recommendation that go to her contention that section 902.12 is a bill of attainder; however, because the remaining objections do not affect the outcome, any objections to this portion of the Report and Recommendation will be overruled.

### b. Equal protection argument

Phillips also challenges the constitutionality of section 902.12 on the ground it violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Judge Zoss applied a rational basis level of scrutiny to section 902.12 and concluded the statute passes constitutional muster; consequently, he recommends that Phillips's equal protection challenge be denied. In her objections, Phillips agrees with Judge Zoss's formulation of her argument, but contends Judge Zoss erred in refusing to subject section 902.12 to strict scrutiny.

Phillips argues that "[t]he list of forcible felonies contained in the statute are under-inclusive and the statute excludes without a rational or legitimate basis other class 'C' forcible felonies as well as some class 'B' forcible felonies that have a higher classification than Petitioner's class 'C' robbery offense." Pet.'s Br., at 12 (Doc. No. 10). She further contends that, apart from containing arbitrary and unreasonably classifications, section 902.12 violates her fundamental rights of "the guarantee of proportionality in sentencing and the guarantee of freedom from a Bill of Attainder." Pet.'s Br., at 14 (Doc. No. 10). In her objections to the Report and Recommendation, Phillips asserts that Judge

Zoss should have applied strict scrutiny to section 902.12 because of its affect on her fundamental rights and that he should have found that section 902.12 failed to pass constitutional muster, even under a rational basis test.

Moreover, Judge Zoss concluded that his determination of the appropriate level of scrutiny depended, in the first instance, upon whether or not Phillips's claims that section 902.12 is unconstitutional under either her Bill of Attainder or proportionality arguments prevailed. The court disagrees. The Constitution's proscriptions against bills of attainder and cruel and unusual punishment are not "fundamental rights." Instead, they are separate constitutional guarantees, which Phillips attempts to bootstrap onto an Equal Protection argument.

■ *i. Burden on fundamental rights argument.* Section 902.12 does not implicate, nor does it unduly burden, any fundamental rights. The Supreme Court has carefully guarded the categories of classifications that implicate heightened scrutiny and has repeatedly refused to expand those categories. *Cf. Bowers v. Hardwick,* 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986) (holding the Constitution does not confer a fundamental right upon homosexuals to engage in sodomy); *San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973) (holding wealth discrimination alone does not implicate heightened scrutiny and declining to hold that public education is a fundamental right). To date, only race, alienage, gender, and illegitimacy implicate a level of scrutiny beyond that of rational basis. *See Loving v. Virginia,* 388 U.S. 1, 11, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (race subject to strict scrutiny); *Korematsu v. United States,* 323 U.S. 214, 216, 65 S.Ct. 193, 89 L.Ed. 194 (1944) (national ancestry and ethnic origin subject to strict scrutiny); *United States v. Virginia,* 518 U.S. 515, 531, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996) (gender classifications require "exceedingly persuasive" justification); *Craig v. Boren,* 429 U.S. 190, 217, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (gender subject to intermediate scrutiny); *Clark v. Jeter,* 486 U.S. 456, 461, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988) (illegitimacy subject to intermediate scrutiny). Further, in light of the fact fundamental rights are extended only to those liberties that are "deeply rooted in this Nation's history and traditions," *Moore v. East Cleveland,* 431 U.S. 494, 503, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (opinion of Powell, J.), it is clear that the distinctions made in section 902.12 do not implicate heightened scrutiny. The specific classifications recognized by section 902.12 involve distinguishing between persons convicted of second degree robbery and persons convicted of other class "C" forcible felonies that are not subject to mandatory maximum sentences. Accordingly, because this classification neither implicates a suspect class nor a fundamental right, rational basis review is the appropriate standard to apply in determining whether section 902.12 runs afoul of the United States Constitution.

*ii. Arbitrary and capricious classification argument.* In his Report and Recommendation, Judge Zoss applied a rational basis level of scrutiny to his analysis of Phillips's claim that the distinctions made in section 902.12 are "arbitrary and invidious." Phillips does not object to application of the rational basis test on this claim, but rather contends that section 902.12 fails the rational basis test.

■ It is well-settled that when statutes classify along lines that do not implicate suspect or quasi-suspect characteristics nor burden fundamental rights, courts apply a rational basis level of scrutiny. *E.g., Heller v. Doe,* 509 U.S. 312, 319, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) ("[A classifi-

cation neither involving fundamental rights nor proceeding along suspect lines] cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose."); *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993) ("In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.") (citing *Sullivan v. Stroop*, 496 U.S. 478, 485, 110 S.Ct. 2499, 110 L.Ed.2d 438 (1990); *Bowen v. Gilliard*, 483 U.S. 587, 600–03, 107 S.Ct. 3008, 97 L.Ed.2d 485 (1987); *United States R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 174–79, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980); *Dandridge v. Williams*, 397 U.S. 471, 484–85, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970)); *Nordlinger v. Hahn*, 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992) ("[T]his Court's cases are clear that, unless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest.") (citing *Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439–41, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976) (*per curiam* )). When reviewing the constitutionality of such a statute, the court's inquiry is simply whether a classification recognized by a statute is rationally related to a legitimate governmental interest. *E.g., Heller*, 509 U.S. at 319, 113 S.Ct. 2637. In other words, the court must ask whether the government has a legitimate interest in making the distinction, and, if so, whether the distinction has a rational relationship to that interest.

That states have a legitimate interest in punishing criminal offenders is obvious. *E.g., United States v. Turkette*, 452 U.S. 576, 586 n. 9, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) (recognizing states's sovereign power to punish criminal offenders); *Flowers v. Warden*, 677 F.Supp. 1275, 1280 (D.Conn.) ("Pursuant to its police powers, the state investigates, prosecutes, tries and punishes criminal misconduct."), *rev'd on other grounds*, 853 F.2d 131 (2d Cir.1988); *Amusement Devices Ass'n v. Ohio*, 443 F.Supp. 1040, 1050 (S.D.Ohio 1977) ("The Constitution of the United States reserves to the respective states broad and substantial police powers which include the power to define criminal activity within their jurisdictions and the power to punish such activity."). State legislatures, furthermore, have broad discretion in establishing the punishment for the commission of criminal offenses. *E.g., Foucha v. Louisiana*, 504 U.S. 71, 76 n. 4, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992) ("There is no doubt that the States have wide discretion in determining punishment for convicted offenders, but the Eighth Amendment ensures that discretion is not unlimited."); *Collins v. Johnston*, 237 U.S. 502, 510, 35 S.Ct. 649, 59 L.Ed. 1071 (1915) (stating that "[t]o establish appropriate penalties for the commission of crime, and to confer upon judicial tribunals a discretion respecting the punishment to be inflicted in particular cases, within limits fixed by the lawmaking power, are functions peculiarly belonging to the several states" and that "the comparative gravity of the criminal offenses, and whether their consequences are more or less injurious" are for state legislatures to decide); *cf. Ramdass*, 530 U.S. at 165, 120 S.Ct. 2113 (stating that "[s]tates have some discretion in determining the extent to which a sen-

tencing jury should be advised of probable future custody and parole status in a future dangerousness case") (citing *O'Dell v. Netherland,* 521 U.S. 151, 166, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997)); *Apprendi v. New Jersey,* 530 U.S. 466, 481, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (recognizing that the Constitution permits judges to exercise discretion within statutory guidelines when imposing sentences). Furthermore, under a rational basis analysis, a state need not articulate the precise reasons why it chose to impose different sentences for different crimes; nothing in the Constitution prevents states from making classifications along non-suspect lines if there is a rational basis for doing so. *See Heller,* 509 U.S. at 319, 113 S.Ct. 2637 (citing *Nordlinger,* 505 U.S. at 15, 112 S.Ct. 2326); *accord Board of Trustees of Univ. of Ala. v. Garrett,* 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001) ("Under rational-basis review, where a group possesses 'distinguishing characteristics relevant to interests the State has the authority to implement,' a State's decision to act on the basis of those differences does not give rise to a constitutional violation.") (quoting *Cleburne,* 473 U.S. at 441, 105 S.Ct. 3249); *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993) ("[T]he State need not articulate its reasoning at the moment a particular decision is made. Rather, the burden is upon the challenging party to negative any reasonably conceivable state of facts that could provide a rational basis for the classification."). The Supreme Court has summarized the scope of rational basis review in equal protection analyses as follows:

> We many times have said, and but weeks ago repeated, that rational-basis review in equal protection analysis "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313, 113 S.Ct.

2096, 2100–2101, 124 L.Ed.2d 211 (1993). *See also, e.g., Dandridge v. Williams,* 397 U.S. 471, 486, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970). Nor does it authorize "the judiciary [to] sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976) (per curiam). For these reasons, a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity. *See, e.g., Beach Communications, supra,* 508 U.S., at 314–315, 113 S.Ct., at 2096; *Kadrmas v. Dickinson Public Schools,* 487 U.S. 450, 462, 108 S.Ct. 2481, 2489, 101 L.Ed.2d 399 (1988); *Hodel v. Indiana,* 452 U.S. 314, 331–332, 101 S.Ct. 2376, 2386–2387, 69 L.Ed.2d 40 (1981); *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 314, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520 (1976) (per curiam). Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose. *See, e.g., Nordlinger v. Hahn,* 505 U.S. 1, 11, 112 S.Ct. 2326, 2331–2332, 120 L.Ed.2d 1 (1992); *Dukes, supra,* 427 U.S., at 303, 96 S.Ct., at 2516. Further, a legislature that creates these categories need not "actually articulate at any time the purpose or rationale supporting its classification." *Nordlinger, supra,* 505 U.S., at 15, 112 S.Ct., at 2334. *See also, e.g., United States Railroad Retirement Bd. v. Fritz,* 449 U.S. 166, 179, 101 S.Ct. 453, 461, 66 L.Ed.2d 368 (1980); *Allied Stores of Ohio, Inc. v. Bowers,* 358 U.S. 522, 528, 79 S.Ct. 437, 441, 3 L.Ed.2d 480 (1959). Instead, a classification "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts

that could provide a rational basis for the classification." *Beach Communications, supra,* 508 U.S., at 313, 113 S.Ct., at 2101. *See also, e.g., Nordlinger, supra,* 505 U.S., at 11, 112 S.Ct., at 2334; *Sullivan v. Stroop,* 496 U.S. 478, 485, 110 S.Ct. 2499, 2504, 110 L.Ed.2d 438 (1990); *Fritz, supra,* 449 U.S., at 174–179, 101 S.Ct., at 459–461; *Vance v. Bradley,* 440 U.S. 93, 111, 99 S.Ct. 939, 949, 59 L.Ed.2d 171 (1979); *Dandridge v. Williams, supra,* 397 U.S., at 484–485, 90 S.Ct., at 1161–1162.

A State, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification. "[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." *Beach Communications, supra,* 508 U.S., at 315, 113 S.Ct. at 2098. *See also, e.g., Vance v. Bradley, supra,* 440 U.S., at 111, 99 S.Ct., at 949; *Hughes v. Alexandria Scrap Corp.,* 426 U.S. 794, 812, 96 S.Ct. 2488, 2499, 49 L.Ed.2d 220 (1976); *Locomotive Firemen v. Chicago, R.I. & P.R. Co.,* 393 U.S. 129, 139, 89 S.Ct. 323, 328, 21 L.Ed.2d 289 (1968). A statute is presumed constitutional, *see supra,* at 2642, and "[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it," *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 364, 93 S.Ct. 1001, 1006, 35 L.Ed.2d 351 (1973) (internal quotation marks omitted), whether or not the basis has a foundation in the record. Finally, courts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends. A classification does not fail rational-basis review because it " 'is not made with mathematical nicety or because in practice it results in some inequality.' " *Dandridge v. Williams, supra,* 397 U.S.,

at 485, 90 S.Ct., at 1161, quoting *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911). "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." *Metropolis Theatre Co. v. Chicago,* 228 U.S. 61, 69–70, 33 S.Ct. 441, 443, 57 L.Ed. 730 (1913). *See also, e.g., Burlington Northern R. Co. v. Ford,* 504 U.S. 648, 651, 112 S.Ct. 2184, 2187, 119 L.Ed.2d 432 (1992); *Vance v. Bradley, supra,* 440 U.S., at 108, and n. 26, 99 S.Ct., at 948 and n. 26; *New Orleans v. Dukes, supra,* 427 U.S., at 303, 96 S.Ct., at 2516; *Schweiker v. Wilson,* 450 U.S. 221, 234, 101 S.Ct. 1074, 1082, 67 L.Ed.2d 186 (1981).

*Heller,* 509 U.S. at 319–21, 113 S.Ct. 2637; *accord Garrett,* 121 S.Ct. at 963–64.

■ It is within this context that the Iowa Supreme Court has twice reviewed and ultimately upheld the constitutionality of the classifications recognized in the 100 percent provision of section 902.12. *See State v. Ceaser,* 585 N.W.2d 192, 196 (Iowa 1998); *Phillips,* 610 N.W.2d at 844. Specifically, the Iowa Supreme Court laid out the standard as follows:

Because a suspect classification is not implicated, we apply the rational basis standard in evaluating section 902.12. *See State v. Fagen,* 323 N.W.2d 242, 243 (Iowa 1982). Under this standard, section 902.12 is constitutional if the classification made by this statute "is a reasonable one and operates equally upon all within the class." *Bell,* 572 N.W.2d at 912. We will uphold a classification "if any state of facts reasonably can be conceived to justify it." *McMahon v. Iowa Dep't of Transp.,* 522 N.W.2d 51, 57 (Iowa 1994).

*Ceaser,* 585 N.W.2d at 196.

The *Phillips* court relied on its previous decision in *Ceaser* when considering Phil-

lips's equal protection argument. In *Ceaser*, the Iowa Supreme Court employed the analytical framework identified above and first noted that Iowa's sentencing scheme classifies forcible felonies into distinct levels. *Id.* at 196–97 (citing IOWA CODE § 702.11). Before distinguishing between punishment, however, the Iowa Code first identifies those crimes defined as forcible felonies, which are "felonious child endangerment, assault, murder, sexual abuse, kidnapping, robbery, arson in the first degree, [and] burglary in the first degree." IOWA CODE § 702.11. Persons convicted of any forcible felony must serve some form of mandatory imprisonment, despite the fact that the Code provides generally for deferred judgments, deferred sentences, and suspended sentences for other crimes. *See id.* § 907.3 (granting sentencing judges discretion to impose deferred judgments, deferred sentences, and suspended sentences upon a guilty verdict or plea, but specifically excluding forcible felonies). Because parole remains available for persons convicted of forcible felonies, the four levels into which the Code divides punishment for these crimes concern whether parole is an option at all and, if so, how much time must be served before being eligible for parole. *See id.* § ch. 906 (allowing for parole generally if in the "best interest of society and the offender").

Turning now to the four levels of forcible felonies, the Code divides them into four subclasses: class "A," class "B," class "C," and class "D." Persons convicted of class "A" felonies "must serve a life sentence and cannot be released on parole 'unless the governor commutes the sentence to a term of years.'" *Ceaser*, 585 N.W.2d at 196–97 (quoting IOWA CODE § 902.1). Class "A" felonies are: first degree murder, first degree sexual assault, and first degree kidnapping. *Id.* at 197 (citing IOWA CODE §§ 707.2, 709.2, 710.2). Because a class "A" felon is sentenced to confinement "for the rest of the defen-

dant's life," and because the Iowa Code specifically excludes a class "A" felon from receiving parole or work release, Iowa's 85% rule does not apply to these sentences, as class "A" felons cannot earn any time off their sentences for good behavior. *See* IOWA CODE § 902.1.

Unlike class "A" felonies, Iowa's Criminal Corrections Code does not have a separate section identifying the remaining subclasses of felonies. *See generally* IOWA CODE ch. 900. Instead, the forcible felonies provided in section 702.11 are capable of being categorized as either class "B," "C," or "D," depending on the defendant's intent and the results of the defendant's conduct. *See id.* §§ 708.4 (willful injury, which is a class "C" felony "if the person causes serious injury to another," but is a class "D" felony "if the person causes bodily injury to another"; however, a class "D" willful injury is not a forcible felony), 708.6 (terrorism, which is a class "C" felony "when the person, with the intent to injure or provoke fear or anger in another, shoots, throws, launches, or discharges a dangerous weapon at, into, or in a building, vehicle, airplane, railroad engine, railroad car, or boat, occupied by another person . . . and thereby places the occupants or people in reasonable apprehension of serious injury . . . ."), 709.4 (sexual abuse in the third degree, which is a class "C" felony), 709.11 (assault with intent to commit sexual abuse, which is a class "C" felony when "[a]ny person commits an assault . . . with intent to commit sexual abuse . . . [and] thereby causes serious injury to any person" but is a class "D" felony "if the person thereby causes any person a bodily injury other than serious injury," and is an "aggravated misdemeanor if no injury results."), 710.4 (kidnapping in the third degree, which is a class "C" felony), and 726.6 (child endangerment, which is a class "C" felony when "[a] person commits child

endangerment resulting in serious injury to a child or minor").

This alone demonstrates that the legislature perceived different evils associated with each crime. However, Phillips's challenge to section 902.12 is premised on her contention that, as among felonies *not* included within the purview of the 100 percent provision of section 902.12, some are more serious than second-degree robbery; therefore, the inclusion of second-degree robbery is arbitrary and capricious because it is underinclusive. Those crimes subject to the 100 percent provision rule include: murder in the second degree, a class "B" felony; attempted murder, a class "B" felony; sexual abuse in the second degree, a class "B" felony; kidnapping in the second degree, a class "B" felony; robbery in the first degree, a class "B" felony; and robbery in the second degree, a class "C" felony. *See id.* §§ 707.3, 707.11, 709.3, 710.3, 711.2, 711.3. Class "C" felonies *not* subject to section 902.12 include: willful injury, terrorism, sexual abuse in the third degree, assault with intent to commit sexual abuse, kidnapping in the third degree, and felonious child endangerment. *Compare id.* § 902.12 (listing offenses subject to 100% provision), *with id.* § 702.11 (defining forcible felony).

As stated above, the Iowa legislature is not required to articulate its reasons for classifying along non-suspect lines. *See Heller,* 509 U.S. at 312, 113 S.Ct. 2637. Furthermore, in light of the strong presumption of validity afforded section 902.12, Phillips bears the burden of proof in this challenge. *See, e.g., Johnson v. City of Minneapolis,* 152 F.3d 859, 862–63 (8th Cir.1998) ("Because no protected class is involved, the legislative decision ... is reviewed only for a rational basis. Where rational basis review is appropriate, the plaintiff/appellant bears the burden of proof, and the statute in question bears a strong presumption of validity.") (citing

*Beach Communications,* 508 U.S. at 314, 113 S.Ct. 2096, which in turn cites *Lyng v. Automobile Workers,* 485 U.S. 360, 370, 108 S.Ct. 1184, 99 L.Ed.2d 380 (1988)); *Gavin v. Branstad,* 122 F.3d 1081, 1090 (8th Cir.1997) ("Because neither a fundamental right nor a suspect classification is at issue here, we apply rational basis review and accord the [statute in question] 'a strong presumption of validity.'") (citing *Heller,* 509 U.S. at 319, 113 S.Ct. 2637). The Iowa Supreme Court correctly applied the rational basis standard of review and discussed the rationale, specifically referencing its decision in *Ceaser. Phillips,* 610 N.W.2d at 844 (citing *Ceaser,* 585 N.W.2d at 196–99). In *Ceaser,* the Iowa court noted that "the legislature is free to impose disparate punishments for different crimes so long as the offenses are distinguishable on their elements." *Id.* at 196 (citing *Delaney v. Gladden,* 397 F.2d 17, 19 (9th Cir.1968); *State v. Montoya,* 196 Colo. 111, 582 P.2d 673, 676 (1978) (*en banc* )). After comparing the elements of second-degree robbery and other class "C" forcible felonies, the Iowa court concluded that "[s]uch an examination reveals that the elements of those offenses not included within section 902.12 are different from the elements of second-degree robbery." *Id.* Accordingly, the Constitution does not mandate that the Iowa legislature impose identical sentences for all class "C" forcible felonies. *Id.* The fact the crimes are comprised of different elements is, at least superficially, enough to justify the disparate treatment with respect to punishment for the commission of these offenses.

The question remains, however, whether such disparate treatment is *rationally related* to the government's legitimate interest in punishing criminals. As stated above, Phillips bears the burden of disproving every "'reasonably conceivable state of facts that could provide a rational basis for the classification.'" *See Beach*

*Communications,* 508 U.S. at 313, 113 S.Ct. 2096 (quoting *Sullivan,* 496 U.S. at 485, 110 S.Ct. 2499).

The Iowa Supreme Court identified several alternative rationales underpinning the inclusion of second degree robbery within the scope of section 902.12. *Ceaser,* 585 N.W.2d at 196. Namely, the Iowa court compared second degree robbery with the crimes of assault while participating in a felony, willful injury, terrorism, third degree sexual abuse, third degree kidnapping, first degree arson, and felonious child endangerment. *Id.* After a detailed and well-reasoned analysis, the court concluded that "the different treatment afforded these crimes [is] 'based upon some apparent difference in situation or circumstance ... which establishes the necessity or propriety of distinction between them.'" *Id.* at 197 (alteration in original) (quoting *Chicago Title Ins. Co. v. Huff,* 256 N.W.2d 17, 29 (Iowa 1977)). The court found that the Iowa legislature reasonably could have determined the following:

> [P]ersons who are willing to use force to accomplish a theft, even when that force has not resulted in serious injury or does not involve a dangerous weapon, pose a greater risk to society than persons whose assaultive behavior is not used as a means to accomplish another crime.

*Id.*

There are several reasons why the legislature could have made this determination. In *United States v. McClinton,* 815 F.2d 1242 (8th Cir.1987), the Eighth Circuit Court of Appeals addressed the constitutionality of a federal statute prohibiting possession of a firearm by a convicted felon, which provided for a fifteen year minimum sentence if the felon had three previous burglary or robbery convictions. The court upheld the statute against an equal protection challenge, noting:

Yet, despite the obvious merit of McClinton's argument, it is difficult to say that the increased penalty provided in the statute was not rationally related to a legitimate concern of the federal government. As Senator Specter stated when he introduced his bill on the subject:

> Robberies and burglaries are the most damaging crimes to society. Robberies and burglaries occur with far greater frequency than other violent felonies, affect many more people, and cause the greatest losses. A person is 40 times more likely to be a victim of a robbery than a rape. Robberies involve physical violence or the threat thereof, being deliberately directed against innocent individuals. Burglaries involve invasion of their homes or workplaces, violation of their privacy, and loss of their most personal and valued possessions. Often—30 percent of robberies—these offenses result in physical injuries; usually—90 percent for robberies—they result in significant financial loss; always they inflict psychological injury. Such crimes force people to live not in freedom, but in fear. Most robberies and burglaries are committed by career criminals. A high percentage of robberies and burglaries are committed by a limited number of repeat offenders. Many commit scores of offenses. Some studies estimated that the majority of these offenses are committed by career criminals. Career criminals often have no lawful employment; their full-time occupation is crime for profit and many commit crimes on a daily basis.

H.R.Rep. No. 1073, 98th Cong., 2d Sess. at 3, *reprinted in,* 1984 U.S.Code Cong. & Admin.News 3661, 3663.

Thus, it is clear that, rightly or wrongly, Congress felt the recidivist nature of

those convicted of robbery and burglary, and the seriousness of those crimes called for the increased penalty of [the statute in question].

*Id.* at 1245.

Thus, the purposes of criminal law and the theories of punishment undoubtedly impacted the legislature's decision with respect to what crimes should be subject to section 902.12. Broadly speaking, the two primary theoretical models of punishment, retributivism and utilitarianism, guide legislative decisionmakers' determinations of what amount of punishment to impose. Allison Marston Danner, *Constructing a Hierarchy of Crimes in International Criminal Law Sentencing*, 87 Va. L.Rev. 415, 437 (2001).

> The broad purposes of the criminal law are . . . to make people do what society regards as desirable and to prevent them from doing what society considers to be undesirable. Since criminal law is framed in terms of imposing punishment for bad conduct, . . . the emphasis is more on the prevention of the undesirable than on the encouragement of the desirable.

WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 1.5, at 30 (1986).

Both specific and general deterrence is, therefore, a primary focus of criminal punishment. *See generally id.* § 1.5, at 30–40. It would be reasonable for the legislature to distinguish between property crimes and crimes against persons on the basis of their amenability to being deterred. The legislature could conclude that crimes against property are based on calculating self-interest, while crimes against persons are crimes of "hate and passion" and that, as a result, crimes of passion are not as susceptible to deterrence. Some studies indicate that, unlike property crimes, "crimes against the person have relatively low recidivism rates."

William L. Barnes, Jr., Note, *Revenge on Utilitarianism: Renouncing a Comprehensive Economic Theory of Crime and Punishment*, 74 Ind. L.J. 627, 648 (1999) (citing Allen J. Beck & Bernard E. Shipley, Bureau of Justice Statistics Special Report, Recidivism of Prisoners Released in 1983, at 6 (1989)). It would, therefore, be reasonable to conclude two things from these statistics. First, one of the purposes of incarceration is to protect the public from criminals. However, if a defendant is not likely to be a repeat offender, longer terms of confinement do not necessarily protect the public any more than shorter terms. Second, inclusion of class "C" crimes against persons would not further the legislative goal of deterrence, while society would arguably reap some benefits from including second degree robbery within the 85% rule, because stiffer penalties for property crimes arguably are more capable of serving a deterrent effect. Therefore, the legislature could have concluded that the benefits garnered from longer terms of confinement for those class "C" forcible felonies not listed in section 902.12 would be small in comparison to the resources necessary to confine these defendants.

There is, of course, no universal consensus on whether deterrence is served by longer terms of confinement at all. However, universal consensus is extraordinarily rare, and it clearly would not be unreasonable for the Iowa legislature to determine that, because second degree robbery is a property crime, it differs in nature from other class "C" forcible felonies and, consequently, that the goal of deterrence would be better effectuated by ensuring second degree robbery defendants receive harsher penalties.

Thus, even though "the standard of rationality . . . must find some footing in the realities of the subject addressed by the

legislation," that requirement is met here because there is a reasonable basis upon which to differentiate between those felonies included within the purview of section 902.12's 100 percent provision. *See Heller*, 509 U.S. at 321, 113 S.Ct. 2637. To summarize, these reasons include: (1) a legislative determination that the use of force in furtherance of another crime is more deserving of punishment; (2) defendants who commit crimes against persons have lower rates of recidivism, thus longer terms of confinement do not necessarily protect society from individual defendants; and (3) property crimes are self-interested and calculated attempts to amass personal gain and, therefore, longer terms of confinement may be more capable of deterring both the defendant and the would-be defendant from committing future crimes, because property crime defendants do not act in the heat of the moment.

Phillips asks too much, seeking to have this court do exactly what the United States Supreme Court has forbidden; that is, to "judge the wisdom, fairness, or logic" of the Iowa statute. This is not the court's role on *habeas* review. *See Richenberg v. Perry*, 97 F.3d 256, 261 (8th Cir.1996). The court finds "there is a rational relationship between the disparity of treatment and some legitimate governmental purpose," *Heller*, 509 U.S. at 320, 113 S.Ct. 2637, in the statutory sentencing scheme enacted by the Iowa Legislature and codified in Iowa Code section 902.12. The

court further finds the Iowa Supreme Court both identified the controlling federal law and correctly applied that law in its scrutiny of the statute. Under the strict limitations placed upon *habeas* review by *Williams*, the court finds no error in the Iowa court's decision. Accordingly, Phillips's equal protection argument must fail.

### 2. As applied Eighth Amendment challenge: Cruel and unusual punishment

Phillips's final claim in this petition for a writ of *habeas corpus* is that section 902.12 constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution because it inflicts upon her a sentence that is disproportionate to the crime she committed. Both the Iowa Supreme Court and Judge Zoss concluded that Phillips's sentence was not objectively cruel and unusual, and Judge Zoss recommends that this court deny Phillips's claim. Phillips objects to this recommendation, asserting, again, that Judge Zoss misconstrued her argument. She does not assert that her three indeterminate sentences not to exceed ten years are cruel and unusual. In fact, Phillips concedes that "the judicial indeterminate sentence imposed upon her is proportional." Pet.'s Br., at 11. However, she maintains that section 902.12 converted her indeterminate sentences into a determinate one, which is a separate sentence from that which the sentencing court imposed.[5]

---

**5.** Further, Phillips urges the court to address her proportionality argument in light of the fact that prisoners serving time for second-degree robbery may ultimately serve more time than arson in the first degree, a non-section 902.12 class "B" forcible felony, which is arguably a more serious offense, and the other class "C" forcible felonies that are not section 902.12 offenses, which include child endangerment, willful injury, and non-exempted sexual abuse. This argument, however, is relevant to Phillips's equal protection claim, rejected above, and not to her propor-

tionality claim. That is so because "a criminal sentence must be *proportionate to the crime for which the defendant has been convicted*," *Solem v. Helm*, 463 U.S. 277, 284, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) (emphasis added), and not proportionate to other offenses. *Cf. United States v. Hopper*, 941 F.2d 419, 422 (6th Cir.1991) (The Eighth Amendment's prohibition against cruel and unusual punishment is "offended only by an extreme disparity between defendant's crime and sentence.").

The Eighth Amendment states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. XIII. The final clause prohibits sentences that are disproportionate to the crime committed. *Solem v. Helm*, 463 U.S. 277, 284, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). Phillips argues that the effect of section 902.12 on her sentence for second-degree robbery violates the Eighth Amendment's proscription against disproportionate sentencing. The Iowa Supreme Court summarily rejected this contention. *See Phillips*, 610 N.W.2d at 843–44. In considering Phillips's disproportionate punishment argument, the Iowa court cited its decision in *State v. Hoskins*, 586 N.W.2d 707 (Iowa 1998). *Hoskins* held that section 902.12 did not impose a disproportionate sentence on second-degree robbery felons:

> [W]e do not believe the ten-year sentence imposed upon a conviction of second-degree robbery, of which Hoskins is required to serve 100%, leads to an inference of gross disproportionality. This is not the rare case in which a proportionality analysis is necessary. *See Harmelin*, 501 U.S. at 1005, 111 S.Ct. at 2707, 115 L.Ed.2d at 871. We therefore conclude section 902.12's requirement that a person convicted of second-degree robbery serve 100% of the maximum sentence does not constitute cruel and unusual punishment.

*Id.* at 709, *quoted in Phillips*, 610 N.W.2d at 844.

Judge Zoss concluded that Phillips's sentences for second-degree robbery were not grossly disproportionate to the crime committed, although concluding that the Iowa Supreme Court employed the incorrect analysis in reaching this same conclusion. In its rejection of Phillips's Eighth Amendment claim, the Iowa Supreme Court held that no proportionality review of Phillips's crime and her sentence were

necessary. *See Phillips*, 610 N.W.2d at 843–44. Magistrate Judge Zoss noted the conundrum between federal courts' role in conducting a *habeas* review of a state court decision in this case, because there is not necessarily "clearly established law, as determined by the Supreme Court of the United States," for the state court to apply. *See* 28 U.S.C. § 2254(d)(1). Judge Zoss aptly described the predicament in his Report and Recommendation on Phillips's claim, and Phillips did not object to his analysis, which this court finds to be a correct statement of Eighth Circuit precedent:

> The Eighth Circuit consistently has chosen to follow the plurality opinion in *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), when considering arguments that a particular sentence is disproportionate to the crime. The Eighth Circuit clearly explained the predicament in *United States v. Miller*, 944 F.2d 396 (8th Cir. 1991), a case involving, among other things, a claim similar to Phillips's argument here. The court's discussion illuminates the very problem faced by the court here, in light of the strict limitations *Williams* has placed on the "source of doctrine on which a federal court may rely in addressing the application for a writ." *Williams*, 529 U.S. at 381–82, 120 S.Ct. at 1507 (quoting *Lindh v. Murphy*, 96 F.3d 856, 869 (7th Cir.1996)).
>
> Miller was convicted of drug trafficking and firearms offenses. Because he had two prior felony drug convictions, Miller was sentenced to mandatory life terms without parole on three of the counts. He challenged those sentences, arguing they violated the Eighth Amendment because the sentences were disproportionate to the offenses. In discussing Miller's claim, the Eighth Circuit explained its view of the fragmented

*Harmelin* opinion and its effect on the *Solem* holding, as follows:

> In *Solem*, the Supreme Court held unconstitutional a sentence of life imprisonment without parole imposed on a defendant who had been convicted of uttering a $100 no account check following six prior felony convictions. The Court enumerated three factors to consider when reviewing the proportionality of a sentence. A reviewing court should look at the gravity of the offense and the harshness of the penalty, the penalties imposed on other criminals in the same jurisdiction, and the sentences imposed for the commission of the same offense in other jurisdictions. [*Solem*, 463 U.S.] at 290–92, 103 S.Ct. at 3009–11. Since this case was submitted, however, the Supreme Court has substantially refined the application of the *Solem* factors. *See Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991).
>
> In *Harmelin*, the Court upheld a mandatory life sentence without parole imposed under Michigan law for possessing more than 650 grams of cocaine. Harmelin had argued that his sentence violated the eighth amendment's ban on cruel and unusual punishment because it was not proportionate to his offense and because the sentencing court was not allowed to consider mitigating circumstances. A majority of the Court rejected both arguments and voted to affirm the judgment. Five justices agreed that mandatory sentences and life imprisonment without parole, in cases such as this, are not constitutionally infirm. The Court, however, issued three opinions, none of which, in its entirety, was joined by a majority of the justices.
>
> The effect of *Harmelin* on the *Solem* proportionality factors is not entirely clear. Justice Scalia, announcing the judgment of the Court and writing an opinion joined by Chief Justice Rehnquist, indicated that *Solem* was incorrectly decided. *Id.* at 963–68, 111 S.Ct. at 2685–87 (Opinion of Scalia, J.). Relying on its history, he concluded that the eighth amendment does not require proportionality review in noncapital cases. *Id.* at 963–95, 111 S.Ct. at 2685–2701. Justice Kennedy, joined by Justices O'Connor and Souter, declined to overrule *Solem*. Rather, he noted that the eighth amendment provides for narrow proportionality review, including noncapital cases. *Id.* at 993–1002, 111 S.Ct. at 2701–05 (Opinion of Kennedy, J.). Justice White, joined by Justices Blackmun and Stevens and, in part, by Justice Marshall, dissented, arguing that *Solem* provided the relevant basis for analysis and Harmelin's sentence violated the eighth amendment. *Id.* at 1008–13, 111 S.Ct. at 2709–11 (White, J., dissenting); *Id.* at 1027–28, 111 S.Ct. at 2719 (Marshall, J., dissenting).
>
> Recognizing that the "precise contours [of proportionality review] are unclear," Justice Kennedy set forth what he believed to be "some common principles that give content to the uses and limits of proportionality review." *Id.* at 959, 111 S.Ct. at 2683 (Opinion of Kennedy, J.). Drawing from *Solem*, *Hutto v. Davis*, 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982), and *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), he concluded: 1) Determining the purposes and objectives of a punishment system and fixing the prison terms for specific offenses are functions properly left to the legislature. The courts should give substantial deference to the legislature's au-

thority in this area. 2) The eighth amendment does not mandate a specific penological theory. 3) Substantial divergence in sentencing theories and terms are likely to result and may be beneficial. A sentence is not necessarily disproportionate because it would not have been imposed in any other state. 4) Objective factors should guide proportionality review. The lack of objective standards to distinguish between terms of years makes successful challenges to such sentences exceedingly rare. *Id.* In summary, the eighth amendment does not require strict proportionality between offense and sentence, and "it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id.* (quoting *Solem,* 463 U.S. at 288, 303, 103 S.Ct. at 3008, 3016–17).

Applying these principles, Justice Kennedy concluded (without considering sentences imposed for other crimes in Michigan or sentences imposed for similar crimes in other jurisdictions) that because of the severity of the offense Harmelin's sentence was within constitutional limits. *Id.* at 1000–06, 111 S.Ct. at 2705–07. He noted that *Solem* did not mandate comparisons with other sentences, but merely suggested that such comparisons might be helpful. "[I]ntra— and inter-jurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Id.* Thus, Justice Kennedy decided that:

The proper role for comparative analysis of sentences, then, is to validate an initial judgment that a sentence is grossly disproportionate to a crime.... In light of the gravity of [Harmelin's] offense, a comparison of

his crime with his sentence does not give rise to an inference of gross disproportionality, and comparative analysis of his sentence with others in Michigan and across the Nation need not be performed.

*Id.* at 1004–06, 111 S.Ct. at 2707.

Thus, two justices would apply no proportionality review outside the capital context, and three other justices would apply proportionality analysis only when the sentence at issue leads to an inference of gross disproportionality. This circuit has followed a similar path, but not to the same degree. *See United States v. Meirovitz,* 918 F.2d 1376, 1380–81 (8th Cir.1990) (noting the suggestive language in *Solem,* but deciding to "engage in the rare review of the constitutionality of a district court sentence" because sentence imposed was life without parole). In light of *Harmelin,* we believe that proportionality review of Miller's sentences is not required.... Miller's sentences are not grossly disproportionate to his offenses.

*Miller,* 944 F.2d at 408–09.

In *United States v. Gordon,* 953 F.2d 1106 (8th Cir.1992), a case addressing the proportionality of the career offender provisions of the Sentencing Guidelines, the Eighth Circuit continued to rely upon the plurality opinion in *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), in making a *Solem*-type disproportionality analysis. The *Gordon* court explained:

Taking the plurality opinion in [*Harmelin*] as our guide, we conduct a "narrow" review ... to determine if [Gordon's] sentence is grossly "disproportioned" to the crime. The result of our review in this case is dictated by the *Harmelin* holding, since *Harme-*

*lin* approved a life sentence for a first offense of cocaine possession, and Gordon has been convicted of a series of drug offenses and has received a lesser sentence than that approved in *Harmelin.*

*Gordon,* 953 F.2d at 1107 (internal citations to *Harmelin* omitted).

Thus, it appears the Eighth Circuit would approve a review that gives deference to the Iowa Legislature's authority in defining and punishing criminal conduct, while performing a narrow *Solem*-type review of a *habeas* petitioner's Eighth Amendment claim that his or her sentence is disproportionate to the crime committed. The conundrum, then, is whether the Eighth Circuit's interpretation of how courts are to apply *Solem,* as modified by *Harmelin,* constitutes the "clearly established law, as determined by the Supreme Court of the United States" contemplated by 28 U.S.C. § 2254(d)(1), or, on the other hand, whether it constitutes the Circuit's own jurisprudence upon which this court no longer may rely. While in the abstract this question could entail, at least to some degree, an analysis of the weight to be given plurality opinions in general,[6] the court finds the answer, at least in the present circumstances, is provided by the *Williams* decision itself.

The *Williams* Court explained that although the AEDPA's amendments to 28 U.S.C. § 2254(d)(1) have restricted United States appellate courts from re-

lying on their own jurisprudence, the amendment " 'does not, however, purport to limit the federal courts' independent interpretive authority with respect to federal questions.' " *Williams,* 529 U.S. at 381–82, 120 S.Ct. at 1507 (quoting *Lindh v. Murphy,* 96 F.3d 856, 869 (7th Cir.1996)). Rejecting an interpretation of the AEDPA that would require even greater deference to be paid to state courts' "reasonable, good-faith interpretations" of the law, the Court noted, " 'We have always held that federal courts, even on *habeas,* have an independent obligation to say what the law is.' " *Williams,* 529 U.S. at 382, 384, 120 S.Ct. at 1507, 1508 (quoting *Wright v. West,* 505 U.S. 277, 305, 112 S.Ct. 2482, 2497, 120 L.Ed.2d 225 (1992)).

Thus, in the absence of further guidance from the Supreme Court as to what constitutes the clearly-established law upon which *habeas* review must be based, this court will steer its course in the direction pointed by the Eighth Circuit, and rely upon the plurality opinion in *Harmelin* in evaluating Phillips's claim. The court therefore turns to consideration of whether Phillips's "sentence is so grossly disproportionate that it violates the Eighth Amendment." *Solem,* 463 U.S. at 291 & n. 17, 103 S.Ct. at 3010 & n. 17.

R. & R., at 12–18.

In short, therefore, the correct analysis of Phillips's proportionality argu-

---

**6.** While the Supreme Court has provided some guidance on the effect of plurality opinions, it is of little help here. The Court has held:

> When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds ....' *Gregg v. Georgia,*

428 U.S. 153, 169 n. 15, 96 S.Ct. 2909, 2923, 49 L.Ed.2d 859 (1976) (opinion of Stewart, Powell, and Stevens, JJ.).

*Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 994, 51 L.Ed.2d 260 (1977); *see also Franklin v. Lynaugh,* 487 U.S. 164, 192 n. 1, 108 S.Ct. 2320, 2337 n. 1, 101 L.Ed.2d 155 (1988). This begs the question of which of the *Harmelin* opinions could be considered the 'narrowest view.'

ment entails the court's examination of the following factors: (1) the gravity of the offense and harshness of the penalty; (2) sentences imposed on other criminals in the jurisdiction; and (3) sentences imposed for the same crime in other jurisdictions. *See Solem,* 463 U.S. at 292, 103 S.Ct. 3001. However, the Eighth Circuit's reading of *Harmelin* narrows *Solem* and sets forth the applicable Eighth Amendment test. *Gordon,* 953 F.2d at 1106–07. Under this test, the court first looks only at the relation of the sentence to Phillips's crimes. *See id.* at 1107. If the court find no "gross disproportionality," it does not proceed to a comparative analysis. *See id.; see also Miller,* 944 F.2d at 408–09.

In objecting to the finding that her sentence was not disproportionate to her crime, Phillips reasserts her argument that the proper sentence under review should be her "determinate ten year sentence imposed by section 902.12" and not her three indeterminate ten year sentences. The court agrees with Phillips's concession that there is nothing grossly disproportionate about the Iowa legislature's authorization of a ten year sentence for second-degree robbery. By arguing that section 902.12, which does no more than mandate that a prisoner serve the maximum term of imprisonment for her crime, somehow imposes a harsher sentence, Phillips seeks only to rehash her bill of attainder argument, which this court has rejected above.

■■■■ The Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan,* 501 U.S. 957, 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring in part and concurring in the judgment) (quoting *Solem,* 463 U.S. at 288, 103 S.Ct. 3001). There is nothing inherently grossly disproportionate about being required to serve the maximum term of imprisonment allowed by statute; "[t]here is no constitu-

tional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); *cf. Harmelin,* 501 U.S. at 998, 111 S.Ct. 2680 (Kennedy, J., concurring) ("[A]s a general matter [it] is properly within the province of legislatures, not courts" to fix punishments for crimes; thus, "reviewing courts ... should grant substantial deference to the broad authority that legislatures possess in determining the types and limits of punishments for crimes."); *United States v. Parker,* 241 F.3d 1114, 1117 (9th Cir. 2001) (rejecting constitutional challenge on federal statute imposing mandatory consecutive sentences for using or carrying a firearm during and in relation to a bank robbery and stating, "Generally, as long as the sentence imposed on a defendant does not exceed statutory limits, this court will not overturn it on Eighth Amendment grounds.") (citing *United States v. Zavala–Serra,* 853 F.2d 1512, 1518 (9th Cir. 1988)).

■■■■ However, even assuming that the correct sentence to be reviewed is a "determinate ten year sentence," the court finds that it is not grossly disproportionate to Phillips's crimes. Although the specific facts supporting Phillips's guilty plea are not contained in the record, a person commits robbery in the second degree when: "(1) a person intends to commit a theft, and (2) in order to accomplish the theft or [to] escape from the crime scene, (3) the person commits an assault (4) without purposely inflicting or attempting to inflict serious injury and when not armed with a dangerous weapon." *Ceaser,* 585 N.W.2d at 197. Thus, because a court cannot accept a guilty plea without an adequate factual basis to support the plea, it is logical to conclude Phillips committed an

assault in the course of either accomplishing a theft or fleeing from a crime scene. *E.g.,* IOWA CODE § 813.2, Rule 8(2)(b) ("The court may refuse to accept a plea of guilty, and shall not accept a plea of guilty without first determining that the plea is made voluntarily and intelligently and has a factual basis."); (CHARLES ALAN WRIGHT, 1A FED. PRAC. & PROC. CRIM.3d 11, Rule 11 (Supp.2001)) ("[T]he court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.").

Given the violent nature of second degree crime, by definition, there is nothing grossly disproportionate between Phillips's ten year sentence and the gravity of the offenses committed by Phillips. In *United States v. Yirkovsky,* 259 F.3d 704 (8th Cir.2001), the Eighth Circuit held that a fifteen year sentence for possession of a single bullet, in violation of 18 U.S.C. § 922(g), which provides that it is unlawful for a person convicted of felony to possess ammunition, was not cruel and unusual punishment. *Id.* at 707. The facts of *Yirkovsky* warrant recitation, because they demonstrate how deferential the judiciary is to legislative determinations of proper punishment. In that case, Yirkovsky was remodeling a house in lieu of paying rent. *Id.* at 705. While in the process of removing and installing carpet, Yirkovsky found a single bullet. *Id.* He placed this bullet in a box in his bedroom. *Id.* Subsequently, Yirkovsky's former girlfriend filed a criminal complaint, alleging that Yirkovsky had her property in his possession. *Id.* When the police questioned Yirkovsky, he gave them permission to search his residence, and they found the single bullet in the box. *Id.* Because he had three prior violent felony convictions, his possession of that bullet subjected him to a fifteen year mandatory minimum sentence. *Id.* at 706. Again, Yirkovsky's crime was the mere possession of a single round of ammunition, and the Eighth Circuit held that this

was not cruel and unusual punishment. *Id.* at 707.

While the court disagrees with the *Yirkovsky* decision, it is the legal standard against which Phillips's cruel and unusual claim must be judged. Phillips's crime involved three assaults and robberies or attempted robberies, certainly more egregious offenses than possessing a single bullet and yet subject to a lesser sentence.

Because the court concludes that Phillips's sentence is not "grossly disproportionate" to the gravity of her offense, the court need not address the remaining prongs of the *Solem* analysis. The court will, therefore, deny Phillips's request for a writ of *habeas corpus* on this ground, finding her sentence does not constitute cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution, and furthermore finding that the Iowa Supreme Court reached the correct result in, likewise, concluding Phillips's sentence was not unconstitutional.

### E. Certificate Of Appealability

A *habeas* petitioner must obtain a certificate of appealability ("COA") from a district or circuit judge before appealing from the denial of a federal *habeas* petition. *See* 28 U.S.C. § 2253(c). A district court possesses the authority to issue certificates of appealability under 28 U.S.C. § 2253(c) and under Federal Rule of Civil Procedure 22(b), *see Tiedeman v. Benson,* 122 F.3d 518, 522 (8th Cir.1997), so long as the court finds a substantial showing of the denial of a federal constitutional right. *See* 28 U.S.C. § 2253(c); *see also Garrett v. United States,* 211 F.3d 1075, 1076–77 (8th Cir.), *cert. denied,* 531 U.S. 908, 121 S.Ct. 254, 148 L.Ed.2d 184 (2000); *Mills v. Norris,* 187 F.3d 881, 882 n. 1 (8th Cir.1999); *Carter v. Hopkins,* 151 F.3d 872, 873–74 (8th Cir.), *cert. denied,* 525 U.S. 1007, 119 S.Ct. 524, 142

L.Ed.2d 435 (1998); *Ramsey v. Bowersox,* 149 F.3d 749 (8th Cir.1998), *cert. denied,* 525 U.S. 1166, 119 S.Ct. 1083, 143 L.Ed.2d 85 (1999); *Cox v. Norris,* 133 F.3d 565, 569 (8th Cir.1997), *cert. denied,* 525 U.S. 834, 119 S.Ct. 89, 142 L.Ed.2d 70 (1998). A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *Cox,* 133 F.3d at 569 (citing *Flieger v. Delo,* 16 F.3d 878, 882–83 (8th Cir.), *cert. denied,* 513 U.S. 946, 115 S.Ct. 355, 130 L.Ed.2d 309 (1994)).

Phillips did not object to Magistrate Judge Zoss's recommendation that a COA be denied. However, applying the above standard to the issue raised in Phillips's section 2254 petition, the court concludes that Phillips has failed to make the requisite "substantial showing" with respect to whether section 902.12 and her ten year sentence run afoul of the United States Constitution, for all the reasons stated above.

Finally, the court has reviewed Judge Zoss's findings on and recommended disposition of issues to which no timely objection was made and finds no "plain error" therein. *See Griffini,* 31 F.3d at 692 (reviewing factual findings for "plain error" where no objections to the magistrate judge's report were filed).

### III. CONCLUSION

For the reasons delineated above, the court **overrules** petitioner Phillips's objections to Judge Zoss's Report and Recommendation. Therefore, pursuant to Judge Zoss's recommendation, the petition is **dismissed**. Moreover, the court determines that the petition does not present questions of substance for appellate review. *See* 28 U.S.C. § 2253(c)(2); Fed. R.App. P. 22(b). Accordingly, a certificate of appeal-ability will not issue as to any claim for relief.

**IT IS SO ORDERED.**